UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Marcie Leana Gibeault,

        Plaintiff,

     -v-                              15-CV-6305
                                             **ORDER**

Carolyn W. Colvin,
Commissioner of Social Security,

        Defendant.

_____

## I. Introduction

Represented by counsel, Marcie Leana Gibeault ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("The Act") seeking review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's request is granted.

## II. Procedural History

The record reveals that on September 29, 2010, plaintiff protectively filed an application for DIB, alleging disability beginning September 29, 2010. After this application was denied, plaintiff requested a hearing, which was held before administrative law judge Susan Wakshul ("the ALJ") on July 12, 2013, with

plaintiff appearing represented by counsel. The ALJ issued an unfavorable decision on December 12, 2013. The Appeals Council denied review of that decision. This timely action followed.

### III. Summary of the Evidence

#### A. Plaintiff's Reports

Plaintiff, who was 28 years old on the alleged onset date of September 29, 2010, ended her career in the banking industry's retail service on September 29, 2010 due to bulging discs, depression, anxiety, fibromyalgia, neck pain, and extremity tingling. Plaintiff's previous occupations included customer service positions at cell phone companies.

Upon applying for DIB, plaintiff wrote on November 16, 2011 that she could carry up to 15 pounds, sit 30 minutes, stand 20 minutes, climb three flights of stairs, and walk up to one-half mile. She felt pain when she reached above, or squatted. She reported weak hands, and difficulty with opening jars. Plaintiff reported that her pain kept her isolated and fearful, and interfered with her focus. She last sought treatment mid-April 2013, and was looking for a new psychotherapist.

The ALJ conducted a hearing on July 12, 2013. Plaintiff reported that she was able to sit for one hour, stand for 20-30 minutes, and generally walk one-half to one mile. She reported that she could painfully lift a gallon of milk, and hold

a coffee cup for a short time. Plaintiff also reported fatigue, anxiety, and concentration and memory problems.

### B. Treating Sources

The record contains treatment records from several sources. In May 2010, Dr. Deborah Pierce began treating plaintiff, roughly four months prior to plaintiff's alleged onset date of September 29, 2010. Dr. Pierce saw plaintiff for in-person treatment over twenty times, referred plaintiff to specialists, and received those specialists' findings. Dr. Pierce diagnosed plaintiff with obesity, fibromyalgia, and depression.

Dr. Pierce's treatment notes focused largely on plaintiff's subjective reports, and did not note significant findings from physical examinations. On May 21, 2013, Dr. Pierce reported that plaintiff's fibromyalgia had improved. Plaintiff reported that massage treatments and medication adjustments were helping her to gradually increase activity and experience "more good days than bad." (T. 503).[1]  In a medical source statement six weeks later, dated July 2, 2013, Dr. Pierce opined that plaintiff's physical capabilities were quite limited. Dr. Pierce opined that plaintiff was limited to only occasional reaching, handling, fingering, feeling, pushing, and pulling. Dr. Pierce further opined that plaintiff could occasionally lift up to 10 pounds, climb ramps and stairs, and balance and stoop. However, Dr. Pierce opined that

---

[1]"T" refers to the Transcript of Administrative Proceedings.

plaintiff was to never climb ladders or scaffolds, and never kneel, crouch, or crawl.

### C. Consulting Sources

Dr. Sandra Boehlert examined plaintiff on January 13, 2012, through Industrial Medicine Associates, P.C.. Dr. Boehlert concluded plaintiff suffered from fibromyalgia and chronic fatigue. Dr. Boehlert observed plaintiff's comment that "both massage and TENS [transcutaneous electrical nerve stimulation] felt good only during the treatment and then the next day it felt like she was hit by a car." T. 407.

Plaintiff's electrodiagnostic studies were normal, and she exhibited full neck motion ranges. Dr. Boehlert observed that plaintiff performed a full squat, and moved on and off the exam table unassisted. Dr. Boehlert opined that plaintiff "ha[d] mild limitation to exertional activity, bending or twisting of the neck, reaching overhead repetitively, and repetitive pushing and pulling." T. 410. Dr. Boehlert opined plaintiff's "[l]umbar spine shows flexion limited to 70 degrees," and her "[h]and and finger dexterity [was] intact. Grip strength 5/5 bilaterally." T. 409. The ALJ gave great weight to Dr. Boehlert's opinion.

Other consultative sources noted similar grip strength opinions. On October 3, 2010, Dr. Andrew McGarry opined that

-4-

plaintiff was positive for Tinel's sign.[1] On October 12, 2010, Dr. Emma Ciafaloni administered plaintiff electrodiagnostic testing and noted 5/5 motor strength, normal muscle bulk in the hands, positive Phalen's sign,[2] and positive Tinel's sign in the wrists. On February 8, 2012, Dr. L. Weaver noted plaintiff's lumbar spine flexion was limited to 70 degrees, and that hand and finger dexterity were intact with 5/5 bilateral grip strength. Dr. Weaver opined that plaintiff "retain[ed] the ability to perform light work." T. 436. On December 28, 2012, Dr. Luciana Curia detected 3-4/5 motor strength in plaintiff's left upper extremity. Finally, on May 19, 2013, Dr. Huayong Hu assessed plaintiff's right hand grip strength at 4/5, and all other major muscle groups at 5/5.

## IV. Scope of Review

When considering a claimant's challenge to the Commission's decision denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial

---

[1] Tinel's sign is a way to detect irritated nerves. It is performed by lightly tapping over the nerve to elicit a sensation of tingling in the distribution of the nerve.

[2] Phalen's sign, or Phalen's maneuver, is a diagnostic test for carpal tunnel syndrome. The maneuver can moderately increase the pressure in the carpal tunnel by compressing the median nerve.

evidence" in the record. *See* 42 U.S.C. §405(g) (the Commissioner's findings "as to fact, if supported by substantial evidence, shall be conclusive"). The reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2015. T. 15. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date, September 29, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: obesity, fibromyalgia, degenerative disc disease, depression, and anxiety.

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listed impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to

perform sedentary work with the following limitations: no repetitive pushing or pulling with the upper extremities, occasionally climb ramps or stairs and never climb ladders, ramps, and scaffolds; occasionally stoop, crouch, crawl, kneel, and reach overhead; and frequently handle and finger. The ALJ limited plaintiff to simple, routine, repetitive tasks that are low stress and limited plaintiff's social interaction to superficial interaction with others.

At step four, the ALJ found that plaintiff did not retain an RFC to perform any past relevant work in the banking industry. The ALJ determined, at step five, that considering plaintiff's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that plaintiff could perform. In making her RFC findings, the ALJ conducted a thorough review of the medical evidence, which included treatment notes from various providers as well as consultative examinations. The ALJ also reviewed plaintiff's testimony and her own reports of her symptoms and activities of daily living ("ADLs"). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. Based on the above, the ALJ concluded that plaintiff was not disabled during the relevant time frame.

## VI. Discussion

### A. Weight Given to Medical Opinions

Plaintiff contends that the ALJ failed to properly weigh the medical opinions. In her decision, the ALJ gave "little" weight to the opinions of treating physician Dr. Pierce. The ALJ gave "great" weight to the opinions of Drs. Blackwell, Boehlert, and Ransom. Plaintiff specifically contends that the ALJ erred in failing to give controlling weight to Dr. Pierce's opinion that plaintiff's physical capacity limited her to only "occasional" handling and fingering. Plaintiff argues that the ALJ's RFC assessment should not have included "frequent" handling and fingering. However, for the reasons that follow, the Court finds that the ALJ's decision was supported by substantial evidence.

The ALJ rejected the portion of Dr. Pierce's opinion which found significant handling and fingering restrictions, because "there [was] nothing in the treating notes of record to support her limitations," and because Dr. Pierce's limiting assertions were undermined when plaintiff "reported improvement in symptoms because of massage and medication change."[1] T. 21.

---

[1] The ALJ limited plaintiff to occasional stooping, crouching, and crawling, rejecting Dr. Pierce's complete ban on those activities. T. 17, 537. The ALJ's decision is fully supported by a January 2012 cervical spine x-ray, which found that "the height of the vertebral bodies and intervertebral disc spaces is relatively well-maintained. The pedicles are intact. There is straightening." T. 411. Plaintiff does not raise this specific contention on appeal.

-8-

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques, and not inconsistent with other substantial evidence in the record. See *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). The Court agrees with the ALJ, however, that Dr. Pierce's assessment of plaintiff's handling and fingering limitations was not supported by substantial record evidence. Indeed, the Court notes that these limitations do not appear to be consistent with the remainder of Dr. Pierce's functional assessment, which noted a diagnosis of fibromyalgia but did not note any explicit hand and grip diagnoses. Dr. Pierce's treatment records mainly reported routine physical examination diagnostics, such as height and weight. Dr. Pierce's opinion did not cite any medical or clinical findings in support of her handling and fingering restriction. In fact, the only notes Dr. Pierce made about plaintiff's hand and grip strength where general notes concerning whether her fibromyalgia had improved or worsened from her previous visit.

The ALJ was within her discretion to accept certain portions of Dr. Pierce's opinion, but reject those that were not supported by her own treatment notes or other substantial record evidence. *See Pavia v. Colvin*, 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (noting that it is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept

other portions of the same report") (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

The ALJ was entitled to rely on the consulting opinion of Dr. Boehlert, who administered an in-person examination in January of 2012. T. 407-410. Plaintiff argues that in *Ligon v. Astrue*, the district court correctively deferred to the plaintiff's treating physician's opinion over the opinion of consultative physicians, submitting that the record evinced that "[e]very single medical source who examined [plaintiff] confirmed the serious and prolonged impairment. . . ." *Ligon v. Astrue*, 2012 U.S. Dist. LEXIS 171341, *45 (E.D.N.Y. Dec. 3, 2012). Unlike *Ligon*'s medical record, the medical record here contains other opinions inconsistent with the treating physician's. Dr. Boehlert's report contained diagnoses substantially supported by the other consultative sources, summarized above. Like Dr. Weaver, Dr. Boehlert noted that plaintiff's lumbar spine showed flexion limited to 70 degrees. And consistent with Drs. Ciafaloni, Weaver, and Hu, Dr. Boehlert assessed plaintiff's upper extremity strength at 5/5.[1] *See, e.g.*, *Younes v. Colvin*, 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015) ("Consultative opinions can be afforded even greater weight than treating-source opinions when there is good reason to reject treating source opinion, and substantial evidence supports them")

---

[1] Regarding plaintiff's grip strength, the Court recently upheld an ALJ's finding that a plaintiff with 4/5 grip strength was able to perform the full range of light work, a more exertive residual functional capacity level than the ALJ's sedentary RFC assessment here. *See Cole v. Colvin*, 2015 U.S. Dist. LEXIS 38610, *27 (W.D.N.Y. Mar. 25, 2015).

(citing SSR 96-6p). Plaintiff's March 2011 laboratory results also noted unremarkable findings of musculoskeletal and neurological testing. For all of these reasons, the Court concludes that the ALJ properly applied the treating physician rule to Dr. Boehlert's opinion.

## B. Credibility

Plaintiff contends the ALJ erred in determining that she was "not entirely credible." T. at 18. The ALJ considered plaintiff's assertions regarding her symptoms and limitations, and her discussion of plaintiff's testimony is accompanied by a thorough review of medical evidence. The ALJ's discussion indicates that the ALJ used the proper credibility assessment standard, especially in light of her explicit citation to 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (concluding an ALJ's explicit mention of 20 C.F.R. 404.1529 and SSR 96-7p sufficiently evinced that the ALJ used the proper legal standard in assessing the plaintiff's credibility); *see also Judelsohn v. Astrue*, 2012 WL 2401587, *6 (W.D.N.Y. Jun. 25, 2012). The Court finds no error in the ALJ's discussion of plaintiff's reports, nor with her finding of conflicts between plaintiff's testimony and the medical record. The ALJ's conclusion that plaintiff's reports were not credible because they were inconsistent with substantial record evidence was thus based on a proper application of the law and is supported by substantial record evidence.

## C. Failure to Consider Obesity

Plaintiff contends that the ALJ failed to properly consider the effects of her obesity on her overall functional limitations. The ALJ found plaintiff's obesity to be a severe impairment but did not specifically address the effects of plaintiff's obesity. To the extent that plaintiff's symptoms or limitations were related to obesity, the ALJ adequately considered the condition in her finding. *See Thompson v. Astrue*, 2013 WL 265239, *3 (W.D.N.Y. Jan. 23, 2013) (the ALJ has no duty to consider obesity as an impairment of contributing factor where the record is "devoid of any suggestion that her weight negatively impacted her ability to work."). Although the record mentions plaintiff's obesity diagnosis, the treatment records and Dr. Pierce's treating opinion does not indicate that obesity significantly affects plaintiff's working capabilities. Nonetheless, the ALJ's decision considered plaintiff's complete medical record and ultimately restricted plaintiff to sedentary work. The Court thus concludes that the ALJ did not err in her obesity assessment. *See Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) ("[T]he ALJ implicitly factored [plaintiff]'s obesity into his RFC determination by relying on medical reports that repeatedly noted [] obesity and provided an overall assessment of her work-related limitations.").

## VII. Conclusion

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings is granted, and plaintiff's motion is denied. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record and is thus a correct application of the law. Consequently, the Complaint is dismissed in its entirety without prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:      June 20, 2016
            Rochester, New York